**INTERNATIONAL COMMERCIAL RESOURCES, LTD., Plaintiff,**

v.

**JAMAICA PUBLIC SERVICES CO., LTD., Defendant.**

**No. 84 Civ. 1971 (RO).**

United States District Court, S.D. New York.

July 10, 1985.

Hill, Rivkins, Carey, Loesberg, O'Brien & Mulroy, New York City (Richard H. Web-

ber, New York City, of counsel), for plaintiff.

Cahill, Gordon & Reindel, New York City (Richard A. Mahfood, New York City, of counsel), for defendant.

## OPINION

OWEN, District Judge.

This action is for alleged contract damages. Defendant moves both for summary judgment dismissing the complaint and for partial summary judgment as to liability on the counterclaims. Plaintiff International Commercial Resources, Ltd., a New York exporter, bases its claim on an oral agreement allegedly made on March 9, 1982 and evidenced by a letter of the same date. Defendant Jamaica Public Service Co., Ltd., a Jamaican utility, counterclaims based on a written agreement dated August 12, 1982. On this Fed.R.Civ.P. 56 motion by defendant, I treat plaintiff's factual allegations as being true. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

According to plaintiff, it arranged for Chemical Bank, not a party, to lend approximately $6.5 million to Jamaica. This money was to be used exclusively to purchase "spare parts and equipment" from ICR. On March 9, 1982, the buyer-seller arrangement was finalized in a phone conversation from New York to Jamaica and confirmed the same day in the following letter, signed by ICR's president.

Following my telephone call to you today, this is to confirm that International Commercial Resources, Ltd. will serve as the exporter of the various goods that the Jamaica Public Service Company, Ltd. (JPS) intends to purchase with the proposed loan of $6,500,000 from Chemical Bank.

In essence, we will provide our competitive price quotations, and upon JPS acceptance and notification of acceptance to Chemical Bank, we will order from various manufacturers/suppliers the items specified and approved. Chemical Bank will handle opening of letters of credit to us before we place firm orders with the manufacturers.

Our fees/commissions will not be an add-on to the cost of goods sold to JPS, rather, we will secure the necessary discounts direct from the manufacturers, particularly those in the United States. Where the item or items must be purchased from manufacturers/suppliers outside the United States, and with whom we cannot secure wholesaler or agent discounts, our add-on cost will be five (5) per cent maximum.

I trust that the above description of our role as exporter is sufficient for your needs. Should you have any questions, please let me know.

No objection having been received to this letter, plaintiff proceeded to arrange the loan, and the loan closing took place on July 30, 1982. Unfortunately, at the closing Jamaica announced that the previously agreed upon pricing arrangement was unacceptable, and that it would insist upon a ceiling of 5% on any mark-up. While the loan closing took place as scheduled, the parties appear to have continued negotiations concerning price. Eventually, and allegedly solely due to an agreement that $20 million in additional business would be forthcoming, plaintiff signed the following letter agreement on August 12, 1982:

In connection with the loan of U.S. $6.5 million from Chemical Bank, International Division, 20 Pine Street, New York, U.S.A. to Jamaica Public Service Company Limited (JPS) and the undertaking that International Commercial Resources Limited (ICR) will serve as the exporter of the various materials and equipment to JPS, we request your agreement to the following:

1. That ICR will secure the best prices that can be obtained for the equipment and materials to be purchased.

2. That your fees and/or commissions will not exceed an aggregate five per cent (5%) of the FOB value of the equipment and materials and any discounts from manufacturers/suppliers

will be for the credit of JPS. The accounts will be reconciled on a quarterly basis to reflect adjustments for commissions or discounts.

When the additional business did not materialize, plaintiff repudiated the August agreement and commenced this action based on the March one.

Defendant first raises the statute of frauds, New York U.C.C. § 2-201. That statute requires that an agreement for "sale of goods for $500 or more," such as this one, must be evidenced by a "writing sufficient to indicate that a contract for sale has been made." Between merchants, a writing in confirmation of the contract and sufficient against the sender, which is received within a reasonable time, is sufficient to satisfy the writing requirement unless written notice of objection is given within ten days of receipt. U.C.C. § 2-201(2). Here, plaintiff's sworn affidavits state that it sent a signed confirming letter, dated the day of the oral agreement, and further states that no objection of any sort was received until the loan closing, over four months later. Thus, plaintiff has clearly met the requirement of a writing evidencing the existence of a contract.

However, U.C.C. § 2-201 also requires that the writing contain a quantity term. In this, these writings are deficient. While the March 9 letter states the total dollar amount of the transaction ($6,500,000), neither letter has even a general description of the items that were to be purchased, defining them only as "various goods that [defendant] intends to purchase" or "various materials and equipment." Nor is this a "requirements" type of contract, *see e.g., Riegel Fiber Corp. v. Anderson Gin Co.,* 512 F.2d 784 (5th Cir.1975); *Eastern Dental Corp. v. Isaac Masel Co., Inc.,* 502 F.Supp. 1354, 1363 (E.D.Pa.1980). There, at least the subject matter of the requirements is known and the commitment exists to purchase all of such items from the seller. At best, I see this as the American plaintiff being the foreign defendant's procurement agent for whatever it is asked to procure, knowing that it can look to Chemi-

cal Bank for payment. Jamaica did not commit itself as to what it would "procure." Therefore, in my judgment, this does not make a contract supporting the cause of action plaintiff asserts.

For the forgoing reasons, defendant's motion to dismiss is granted and its motion for summary judgment as to liability on the counterclaim is denied. Submit order on notice.